Donathan Garvin **KEMP**, Appellant,

v.

**UNITED STATES of America,**
Appellee.

No. 25675.

United States Court of Appeals
Fifth Circuit.

Sept. 15, 1969.

Rehearing Denied Nov. 26, 1969.

Howard Moore, Jr., Peter E. Rindskopf, Atlanta, Ga., for appellant.

Charles L. Goodson, U. S. Atty., Charles B. Lewis, Jr., Asst. U. S. Atty., Atlanta, Ga., for appellee.

Before JOHN R. BROWN, Chief Judge, THORNBERRY, Circuit Judge, and TAYLOR, District Judge.

WILLIAM M. TAYLOR, Jr., District Judge:

Appellant was convicted in the United States District Court for the Northern District of Georgia for violation of the Universal Military Training & Service Act, 50 U.S.C. App. § 462, for failure to comply with an order of his local Selective Service Board to submit to induction into the Armed Forces of the United States. His refusal to so submit was predicated on his contention that he was a conscientious objector. His several contentions for refusal are found to be without merit and accordingly we affirm.

In the trial of this case the government relied upon the contents of Appellant's Selective Service file. This file contains the report of Captain Jon D. Kindred of the Armed Forces Examining and Entrance Station, Atlanta, Georgia. This report shows Appellant's refusal to submit to induction on November 14, 1966, registrant stating that he was a Muslim and it was against his belief and religion to serve in the Armed Forces. Appellant contends that the re-

port of Captain Kindred was a violation of his right of confrontation under the 6th Amendment to the United States Constitution. The report by Captain Kindred was required by Army Reg. 601–270, ¶ 40(c). Such report was part of the Selective Service file and the author (Captain Kindred) had personal knowledge of the event on which he reports. His personal knowledge is not challenged. The file was admissible in evidence as a public document. 28 U.S.C. § 1733. In Yaich v. United States (9 Cir. 1960), 283 F.2d 613, the Court said:

"As a general rule in prosecutions for violation of the Universal Military Training & Service Act, the selective service file of the delinquent registrant is admissible into evidence as a public document under the provisions of Title 28 U.S.C.A. 1733. * * * The mere fact that a document qualifies as a public record, however, does not ipso facto overcome the hearsay objection unless the document relates to an event to which the author of the document could himself testify."

The Trial Court did not err in denying the motion for judgment of acquittal predicated on this ground.

█ Appellant's next contention urges that the court below erred in overruling his motion for judgment of acquittal on the ground that the evidence was insufficient to authorize a verdict and judgment for the government. After examining the record we feel the evidence was sufficient to support the conviction. The Selective Service file was admitted and contains evidence upon which reasonable minds could conclude that the Appellant was guilty of the offense charged. Appellant's motion for acquittal was filed in court several days after the verdict was returned. It had not been urged at the close of all the evidence. Even if there was a question as to the sufficiency of the evidence of identification of Appellant, such question was not properly preserved. In Hall v. United States (5th Cir. 1968), 403 F.2d 649, involving theft of goods in inter-state commerce where Appellant raised the question of sufficiency of evidence, this Court said:

"In any event, the question was not preserved for appellate review by renewal of Appellant's motion for judgment of acquittal at the close of all the evidence."

Had such question been timely raised before the jury was discharged there would have been an opportunity for the Trial Court to permit a reopening of the case for correction of such error if defendant was sincere in such contention.

Appellant also contends:

(1) the Universal Military Training & Service Act is unconstitutional;

(2) that there was racial and other discrimination in the composition of the Selective Service Board;

(3) that there was racial discrimination in the composition of the jury; and

(4) that induction would compel Appellant to participate in the commission of crimes against international peace and security and the commission of war crimes.

These contentions were answered by this Court in Simmons v. United States (5 Cir. 1969), 406 F.2d 456. We still so hold.

█ As to contention (1) the *Simmons* case holds:

"That this court is not competent or empowered to sit as a super-executive authority to review the decisions of the Executive and Legislative branches of government in regard to the necessity, method of selection, and composition of our defense forces is obvious and needs no further discussion (cases cited). 'The draft does not depend upon the existence of a war or national emergency, but stems also from the Constitutional power to raise and support armies and to provide and maintain a navy.' (cases cited) * * * While it is true that the war power, and presumably the power to raise armies in peacetime, is subject to consti-

tutional limitations, considerations of national defense may render lawful what would be unlawful in a different context."

It also states concerning the contention of discrimination because of student deferments:

"While obviously such deferments may have the collateral effect of discrimination against those who are not wealthy enough or bright enough to attend college, this classification is reasonable in light of the public policy in favor of an educated population (cases cited)."

■ Contention (2) was answered in the *Simmons* case by a quote from an earlier decision by this Court. Clay v. United States (5 Cir. 1968), 397 F.2d 901. The judgment in the *Clay* case was summarily vacated by the United States Supreme Court on the basis of wiretapping. We, however, still follow the holding in the following quote because it is on other grounds.

"No court has held, so far as we can determine, nor do we here, that a Negro registrant for selective service is entitled to be classified and inducted by a selective service board composed of a percentage of Negro members which the Negro population bears to the total population, or that a board lacks jurisdiction of a registrant unless so constituted. * * * a draft board system which does not have a sufficiently representative number of Negro members is comparable to a malapportioned legislature. The acts of such a legislature are not invalid and the laws which it passes are not null and void."

As was shown in the *Simmons* case, this same reasoning applies to the other classes which it is alleged have been discriminated against.

■ The heart of Appellant's contention (3) is aimed at the source from which jurors are selected. Appellant is urging that exclusive use of the voter registration lists results in the exclu-

sion of an identifiable racial group, which would otherwise have been considered but for the fact that the jury selection process began and ended with a source from which members of his group had been excluded. The jury wheel consisted of 4,563 names, of which 725 were Negroes or 15.77% of the total number of jurors. The same percentages existed in the *Simmons* case and this court held then:

"* * * neither the jury wheel nor the venire need precisely conform to the proportionate strength of each identifiable group in the total population. * * * we find that the underrepresentation of Negroes in the jury wheel in comparison with their share of the total population was not of such magnitude as to warrant overturning the appellant's conviction." (See footnote 8 in the *Simmons* case for comparisons).

■ The fourth contention listed above is likewise without merit, as pointed out in the *Simmons* case where United States v. Mitchell (2 Cir. 1966), 369 F.2d 323, is quoted:

"* * * as a matter of law the Congressional power to 'raise and support armies' and 'to provide and maintain a navy' is a matter quite distinct from the use which the Executive makes of those who have been found qualified and who have been inducted into the Armed Forces."

The only questions before this court concern induction of the Appellant, and just because he is inducted does not mean he will be called on to fight in Vietnam.

By supplemental brief which was not answered by the Appellee the Appellant asserts plain error in the Board's failure to advise the registrant that his C.O. Form 150 had been considered and did not warrant the reopening of registrant's classification. It is alleged that this failure caused him to be without sufficient information upon which he could make an intelligent decision as to whether to appeal or request an appear-

ance. 32 C.F.R. 1625.4 [1] is cited as authority for this proposition.

■ On October 14, 1965 Appellant was classified 1–A and from this he never requested a personal appearance nor an appeal. On May 2, 1966 (almost 7 months later) Appellant returned a conscientious objector form 150. The Board took no action at that time on the form, although they did receive it. On August 26, 1966, Notice to Report for Induction was mailed to Appellant. He came in on the designated day but failed to step forward for induction. On October 13, 1966, the local board met and, completely ignoring Appellant's failure on September 15, 1966 to step forward for induction, voted on what to classify him based on his C.O. Form 150. This form was being considered for the first time by the Board and was "written information presenting facts not considered when the registrant was classified." (32 C.F.R. 1625.2) [2] Therefore, pursuant to the foregoing regulation the board had reopened and considered anew the classification. After such consideration they voted unanimously to classify Appellant 1–A and allowed an appeal time in accordance with 32 C.F.R. 1625.11. [3] This 1–A classification was given as if he had never before been classified as 32 C.F.R. 1625.11 requires. In following the regulations to the letter the Board, in accordance with 32 C.F.R. 1625.12. [4]

1. "§ 1625.4 Refusal to reopen and consider anew registrant's classification.

When a registrant, any person who claims to be a dependent of a registrant, any person who has on file a written request for the current deferment of the registrant in a case involving occupational deferment, or the government appeal agent files with the local board a written request to reopen and consider anew the registrant's classification and the local board is of the opinion that the information accompanying such request fails to present any facts in addition to those considered when the registrant was classified, or, even if new facts are presented, the local board is of the opinion that such facts, if true, would not justify a change in such registrant's classification, it shall not reopen the registrant's classification. In such a case, the local board, by letter, shall advise the person filing the request that the information submitted does not warrant the reopening of the registrant's classification and shall place a copy of the letter in the registrant's file. No other record of the receipt of such a request and the action taken thereon is required."

2. "§ 1625.2 When registrant's classification may be reopened and considered anew.

The local board may reopen and consider anew the classification of a registrant (a) upon the written request of the registrant, the government appeal agent, any person who claims to be a dependent of the registrant, or any person who has on file a written request for the current deferment of the registrant in a case involving occupational deferment, if such request is accompanied by written information presenting facts not considered when the registrant was classified, which, if true, would justify a change in the registrant's classification; or (b) upon its own motion if such action is based upon facts not considered when the registrant was classified which, if true, would justify a change in the registrant's classification; provided in either event, the classification of a registrant shall not be reopened after the local board has mailed to such registrant an Order to Report for Induction (SSS Form No. 252) or an Order to Report for Civilian Work and Statement of Employer (SSS Form No. 153) unless the local board first specifically finds there has been a change in the registrant's status resulting from circumstances over which the registrant had no control."

3. "§ 1625.11. Classification considered anew when reopened.

When the local board reopens the registrant's classification it shall consider the new information which it has received and shall again classify the registrant in the same manner as if he had never before been classified. Such classification shall be and have the effect of a new and original classification even though the registrant is again placed in the class that he was in before his classification was reopened."

4. "§ 1625.12. Notice of action when classification considered anew.

When the local board reopens the registrant's classification, it shall, as soon as practicable after it has again classified the registrant, mail notice thereof

mailed "notice thereof on Notice of Classification (SSS Form 110)" to Appellant.

These facts show that the Board intended to reopen the classification and in fact did so. Therefore, 32 C.F.R. 1625.4 did not apply and the Board did not have to send notification of what it considered when it reopened the classification.

Affirmed.

on Notice of Classification (SSS Form No. 110) to the registrant and on Classification Advice (SSS Form No. 111) to the persons entitled to receive such notice or advice on an original classification under the provisions of § 1623.4 of this chapter."