UNITED STATES of America,
Plaintiff,

v.

Oscar Ellsworth CLINTON, Defendant.

Crim. No. 31857.

United States District Court,
E. D. Louisiana,
New Orleans Division.

Feb. 26, 1970.

Daniel Markey, Asst. U. S. Atty., and Joseph A. Taranto, New Orleans, La., Gen. Atty. Selective Service, for plaintiff.

James Keenan, New Orleans, La., for defendant.

RUBIN, District Judge:

In this prosecution for refusing to submit to induction into the armed forces, defendant has fired a barrage against the indictment, seeking to strike it down on a number of grounds, including the alleged unconstitutionality of the Military Selective Service Act of 1967, 50 U.S.C.A. App. §§ 451–473, and of some of the Regulations promulgated thereunder, and alleging in addition the invalidity of several other Regulations and of the actions of his draft board.[1]

■■ Conscription is the means by which Congress—acting within its constitutional authority—has chosen to provide personnel for the national defense. Having reached that major policy decision, Congress has full discretion to structure the national system of obliga-

tory service as it sees fit, limited by the Fifth Amendment's guarantee of due process and, of course, by the Constitution's specific personal protections. A number of defendant's objections to this prosecution concern issues within Congress's discretionary sphere; although sincere and imaginative, the questions they raise are appropriate for resolution through political debate and legislation, not through judicial determination in a criminal prosecution.

■ Thus, defendant asserts that because women are not subject to the draft and certain classes of students receive automatic deferments or exemptions, he is deprived of the fair and equal treatment guaranteed him by the Fifth Amendment, Bolling v. Sharpe, 1954, 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884. Draft reform to eliminate the special burdens carried by those unable to postpone their military obligation through available deferments is currently a matter of intense national concern, and a great variety of proposed legislative changes, including abolition of peacetime conscription entirely, has been suggested to Congress. This debate underlines the fact that the question of whom to call up is essentially a political one, and that the political process is now specifically focused on it.

■ But the wisdom of the legislative definition of the manpower pool is not a matter for a court to rule on. Congress is constitutionally permitted to draw rational distinctions in deciding from whom to require military service, according to its own evaluation of the nation's needs, military, civilian and societal. The exclusion of ministerial students[2] and college undergraduates, as

---

1. A technical objection to the form of the indictment, although raised in the initial motion to dismiss, was subsequently abandoned, and defendant and his counsel entered into a stipulation with the Government that they had not been prejudiced by this formal defect and would not rely upon it in seeking relief from a possible conviction.

2. Defendant contends this exclusion violates the First Amendment guarantee of

freedom of religion. As there has been no showing that defendant purports to be a spiritual leader of a sectarian group not recognized under the terms of the exemption, he cannot here complain that its requirements violate his personal religious freedom; on the other hand, he does not have standing, in this criminal case, to attack the provision generally as an establishment of religion.

well as of fathers, sole surviving sons, medical and dental students and others, reflects this type of balancing, rather than an unconstitutional, arbitrary, preference. Simmons v. United States, 5 Cir.1969, 406 F.2d 456; United States v. Fallon, 7 Cir., 407 F.2d 621, cert. denied, 395 U.S. 908, 89 S.Ct. 1749, 23 L. Ed.2d 220, 1969; United States v. Branigan, S.D.N.Y.1969, 299 F.Supp. 225. Similarly, while discrimination according to sex may be unconstitutionally arbitrary in some contexts, Congressional chivalry in drafting men only to comprise an army has a sufficiently rational basis to avoid constitutional condemnation as mere male chauvinism. See United States v. Fallon, *supra*.

 In addition, defendant challenges the constitutionality of the Selective Service System on the ground that it is not covered by the major provisions of the Administrative Procedure Act (APA), 5 U.S.C.A. § 500 et seq.[3] His attack is directed primarily to the exclusion of the Selective Service from the rule-making procedures prescribed by Section 4 of the APA, 5 U.S.C.A. § 553, which afford interested persons a limited opportunity to be heard on proposed agency rules. Conceding that such procedures are not, in themselves, *constitutionally* required, defendant argues that the Regulations promulgated by the Selective Service are of such crucial importance to a significant segment of the public that to withhold the privilege of "citizen participation" from those interested in draft regulations, while granting it to those interested in the affairs of all other government agencies, constitutes invidious discrimination.

 Like defendant's contentions that "the unfair procedures endemic to the Selective Service System in and of themselves constitute a denial of due process," and that the System as a whole is following a constitutionally and legally unauthorized policy of "manpower channeling," this objection would make the due process clause a constitutional iron maiden. The APA is not Congress's response to a constitutional mandate, but to its own judgment. The Act is a blanket procedural statute, which, by its own terms, leaves room for special procedures to be established to suit the particular needs of individual agencies.[4] Congress has, in turn, provided procedural standards for the operation of the Selective Service System, and if the administrative practice fails to comport with the legislative standard, or with constitutional requirements, a court can act to correct the situation. Defendant feels the rules in which he is interested are so significant that the public should be permitted to participate in their formulation; Congress's value judgment was apparently different, and a rational basis for that judgment is easily discernible. Defendant's remedy is to persuade Congress to change its value judgment.

 Several of defendant's contentions concerning the Selective Service System's alleged abridgment of individual rights have been authoritatively rejected by the Fifth Circuit, and cannot be re-examined in this court. In Clay v. United States, 5 Cir. 1968, 397 F.2d 901, vacated on other grounds sub. nom. Giordano v. United States, 1969, 394 U. S. 310, 89 S.Ct. 1164, 22 L.Ed.2d 297, the Fifth Circuit held that the acts of a board on which Negroes were underrepresented, like those of a malapportioned legislature, do not thereby lose their va-

3. Section 13(b) of the Military Selective Service Act of 1967, 50 U.S.C.A. App. § 463, declares: "All functions performed under this title * * * shall be excluded from the operation of the Administrative Procedure Act * * * except as to the requirements of section 3 of such Act * * *." Section 3 of the APA deals with freedom of information.

4. Section 12 of the APA, 5 U.S.C.A. § 559, states: "Except as otherwise required by law, requirements or privileges relating to evidence or procedure apply equally to agencies and persons." This, along with other language in that subsection, clearly contemplates the exemption of certain agencies from coverage, where such exemption is provided for by legislation.

lidity. This opinion was followed in Simmons v. United States, 5 Cir.1969, 406 F.2d 456, despite appellant's argument (like defendant's contention here) that his draft board's orders were invalid because Negroes, women, young people and poor people had been deliberately excluded from membership.

██ In *Simmons, supra,* the Fifth Circuit also held, contrary to the position urged by defendant, that the legality of the war in Vietnam is not a justiciable issue, and quoted with approval the holding in United States v. Mitchell, 2 Cir.1966, 369 F.2d 323, that, regardless of the amenability of that controversy to judicial evaluation, the existence and character of the war are not relevant issues in defense to an indictment for refusing induction. See Kemp v. United States, 5 Cir.1969, 415 F.2d 1185.

██ In Robertson v. United States, 5 Cir.1969, 417 F.2d 440, the Fifth Circuit, sitting *en banc,* foreclosed consideration of defendant's argument that he was denied due process because Selective Service Reg. 1624.1(b) deprives registrants of the right to be represented by counsel before their draft board. The court said,

"Proceedings before a draft board are not stages in a criminal prosecution, and there, therefore, is no merit to appellant's contention that Selective Service Regulations are constitutionally deficient under the Fifth and Sixth Amendments in denying the right to assistance of counsel * * *." 417 F.2d at 447.

Thus, even if the Regulation is unauthorized by the statute, as defendant contends, he has not been prejudiced, as it denies him no right recognized in this Circuit.

██ Defendant charges that the Act is unconstitutional in that it provides conscientious objector status for registrants whose religious beliefs prompt them to oppose war in any form, but not for those whose faith leads them to refrain from participation only in those wars that they find "unjust." This question is presently pending before the Supreme Court, in the cases of United States v. Sisson, D.Mass.1969, 297 F. Supp. 902, prob. jur. noted, 1969, 396 U. S. 812, 90 S.Ct. 92, 24 L.Ed.2d 65, and Welsh v. United States, 9 Cir.1969, 404 F.2d 1078, cert. granted, 1969, 396 U.S. 816, 90 S.Ct. 53, 24 L.Ed.2d 67. It need not be reached at this stage in the instant case, as there has been no showing that defendant is religiously opposed to some, any or all wars, and therefore no reason to presume his religious freedom may have been violated.

The motion to dismiss the indictment, on the grounds discussed above, will be denied. However, one issue raised by the defendant has not been considered in this opinion; the court would like further briefs and argument of counsel on the issue whether the fact that defendant's draft board was improperly constituted, in violation of Selective Service Reg. 1064.52(c), may be pressed as a defense to a charge of refusing to obey their orders. The court is concerned with the application of the "de facto officer" doctrine, in the light of Glidden v. Zdanok, 1962, 370 U.S. 530, 82 S. Ct. 1459, 8 L.Ed.2d 671; United States v. Allocco, 2 Cir.1962, 305 F.2d 704, cert. denied, 371 U.S. 964, 83 S.Ct. 545, 9 L. Ed.2d 511, 1963; United States v. Machado, N.D.Cal.1969, 306 F.Supp. 995, and Note, The De Facto Officer Doctrine, 63 Col.L.Rev. 909 (1963). Briefs will be submitted within five days and oral argument is set for the 3rd day of March, 1970, at 9:00 a. m.