**UNITED STATES of America,
Plaintiff,**

v.

**Roy Eldon ENGLAND, Defendant.
Crim. A. No. 23387–3.**

United States District Court,
W. D. Missouri, W. D.
June 16, 1971.

———◆———

Paul Anthony White, Asst. U. S. Atty., Kansas City, Mo., for plaintiff.

Richard B. Globus, Stephen B. Millin, Kansas City, Mo., for defendant.

### FINDINGS OF FACT, CONCLUSIONS OF LAW AND JUDGMENT DISMISSING INDICTMENT

WILLIAM H. BECKER, Chief Judge.

In the indictment returned herein on January 29, 1970, defendant is accused of knowingly, wilfully and unlawfully failing and refusing to report for induction on May 14, 1969, in violation of Section 462, Title 50–App., United States Code. The defendant claimed after the order of induction was lawfully issued that he was entitled to a hardship deferment and conscientious objector reclassification because of late crystallized beliefs.

The Court has now conducted its examination of defendant's Selective Service file in accordance with the rule of Cox v. United States, 332 U.S. 442, 453, 68 S.Ct. 115, 120, 92 L.Ed. 59, that the issue of whether the procedures were lawful and whether there is a basis of fact for the Board's classification of petitioner are questions for the Court to decide rather than for the jury. Further, a plenary pretrial hearing and conference were held in this cause on April 12, 1971, on the initiative of the Court. At that time counsel and the parties were granted an opportunity to present their views relative to the contents and sufficiency of the Selective Service file to support the order of induction. All pending motions, written and oral, were also heard at that time.

The persistent erratic, contumacious, and belligerent misconduct of defendant's originally employed and later appointed counsel has made it impossible to hold in chambers an orderly pretrial conference. Only in open Court under conditions justifying full use of the powers of direct contempt, has it been possible to preserve order and provide hearings on the real issues in this case. Power is reserved to give further consideration to this misconduct of originally employed counsel for the defendant. The result in this case is not reached because of the efforts of defendant's originally employed counsel but in spite of them. When it appeared conclusively that the real issues in this case could not be exposed and heard on the distracting, provocative and immaterial pretrial motions of defendant's original counsel, the government was ordered, on the initiative of the Court, to submit the Selective Service Board File of the defendant and a plenary pretrial conference and hearing was held in open Court. This was necessary because of the ineffective, detrimental misconduct of defendant's original counsel. The appearance for the defendant at the final hearings and conference of Stephen B. Millin, Esquire, seemed somewhat to deter the originally employed counsel in his misbehavior. As a result of the pretrial conference directed by the Court, it has been possible to arrive at the following findings of fact and conclusions of law.

■ Based on the facts evidenced by the file and the applicable law, the conclusion has been reached that the indictment herein should be dismissed without prejudice to further proceedings in the Selective Service System because of the invalidity of the order to report for induction.[1]

1. In Cox v. United States, 332 U.S. 442, 68 S.Ct. 115, 92 L.Ed. 59, it was held that, if a 1–A classification is given in spite of the lack of a "basis-in-fact" supporting it or as the result of a denial of due process, the defect is jurisdictional

The Selective Service file in this case shows that the Board continued to consider the conscientious objector and hardship claims of defendant after the date on which defendant was to have reported for induction and after the date the indictment herein was found; that the Board actually did consider the conscientious objector claim on its merits but under an erroneous legal conclusion that they had no power to reopen defendant's case; that the Board refused to hear the hardship claim on its merits under the same erroneous conclusion but determined the issue of "change of circumstances" under inapplicable legal standards and without hearing evidence on the merits of the issue; that the Board at one time formally postponed defendant's induction notice; erroneously refused reconsideration of the claims on March 1970 pursuant to Regulation § 1625.2(b) when that regulation was no longer applicable, and finally denied defendant's conscientious objector claim on its merits without according defendant any right of appeal. The Court therefore concludes that, under the applicable law, under the peculiar facts of this case, the indictment herein must be dismissed. This conclusion is not to be considered a precedent generally, in the absence of the peculiar facts of this case.

The following constitutes a chronological summary of defendant's Selective Service file.

█ On May 22, 1967, defendant registered with Local Board #43 of Hickory County, Missouri. The questionnaire form filed out by defendant at that time does not contain expressly or by implication any conscientious objector claim by defendant, although a space is provided thereon for making such a claim. On May 29, 1967, defendant was classified 1–A and reclassified 2–S on September 25, 1967, upon his becoming a student at

and the Board must be deemed without jurisdiction to issue the induction order. In that case, it was stated:

"The question of jurisdiction of the local board is reached only if there is no basis in fact for the classification which it gave the registrant." 332 U.S. at 448, 68 S.Ct. at 118, 92 L.Ed. at 67. In spite of the fact that defendant is charged with failure to report for induction (as opposed to failure to submit to induction), he may still raise the defenses of "basis-in-fact" or denial of due process in this prosecution. In McKart v. United States, 395 U.S. 185, 89 S.Ct. 1657, 23 L.Ed.2d 194, the Supreme Court of the United States disapproved the earlier rule of Falbo v. United States, 320 U.S. 549, 64 S.Ct. 346, 88 L.Ed. 305, that a defendant who had failed to report for induction could not raise procedural defaults of the Selective Service System as defenses. The rule that administrative remedies within the System must be exhausted before the procedural defenses may be raised, however, apparently survives the McKart decision. See Smogor v. United States (C.A.7) 415 F.2d 296, cert. denied, 396 U.S. 972, 90 S.Ct. 460, 24 L.Ed.2d 440. That question, however, is currently under consideration in the Supreme Court. See McGee v. United States, 402 U.S. 479, 29 L.Ed.2d 47. (This case was decided on May 17, 1971,

holding that the doctrine of exhaustion of administrative remedies still, in appropriate cases, retains vitality.) The power of the Court to dismiss an indictment for procedural default by the Local Board in its own proceedings has been recently implicitly reaffirmed in United States v. Weller, 401 U.S. 254, 91 S.Ct. 602, 28 L.Ed.2d 26, in which the Supreme Court held that claims of procedural default by the draft board were claims that the registrant "has committed no crime." In United States v. Sisson, 399 U.S. 267, 90 S.Ct. 2117, 26 L.Ed.2d 608, the Supreme Court held that the government could not appeal the dismissal of an indictment on the basis of conscientious objection as an appeal from the sustaining of a "motion in bar" under the Criminal Appeals Act, § 3731, Title 18, United States Code, holding that the conscientious objector issue was in that case necessarily tried under the general issue. That case, however, recognizes the power of the district court to dismiss the indictment for procedural default of the Board under Rule 12, F.R.Crim.P., as a question which has "nothing whatsoever to do with the quite distinct issue of the jurisdictional provisions of § 3731." 399 U.S. at 302, 90 S.Ct. at 2136, note 56, 26 L.Ed.2d at 631. See also United States v. Weller, *supra*.

St. Paul's College. (This eliminated his privilege to submit a timely claim for reclassification solely on the ground that his wife might thereafter become pregnant.) After notification from St. Paul's College dated June 13, 1968, that defendant was not eligible to return to that college, defendant was again classified 1–A on June 24, 1968. On September 12, 1968, defendant was ordered to report for a physical examination, and was subsequently found to meet the physical and mental standards for induction. Defendant was then ordered to report for induction on October 21, 1968. On September 19, 1968, plaintiff requested a deferment in order to do farm work for one Lee Bright. The deferment was granted, and defendant was granted a 2–C classification and the order to report for induction on October 21, 1968, was cancelled. On November 25, 1968, defendant was reclassified 1–A after an audit of local deferments by the State Selective Service System revealed that defendant was not entitled to the 2–C deferment. After being granted an opportunity for a personal appearance which he did not exercise, defendant's 2–C claim was considered on appeal and denied by the State Director on February 17, 1969. A physical examination conducted on March 25, 1969, again found defendant fit for military service. On April 10, 1969, the Navy Recruiter in Lebanon, Missouri, wrote defendant's Local Board stating that defendant had applied for a Navy commission and was scheduled to enlist in the Navy's 120-day delay program on May 8, 1969. On April 24, 1969, the Local Board issued its order for defendant to report for induction on May 14, 1969. Thereafter, on April 29, 1969, the Navy Recruiter requested the Local Board to release defendant from the induction order so that he might enlist in the Navy on May 13, 1969. The Local Board replied on May 1, 1969, that the induction order would be cancelled on receipt of DD Form 53, indicating that defendant had enlisted in the Navy. Subsequently, on May 5, 1969, the Local Board was notified by the Navy Recruiter that defendant had withdrawn from the Navy program. On the same date, defendant asserted his conscientious objector claim by requesting that the Board issue him SSS Form 150 upon which he might make his claim. While the claim subsequently submitted by plaintiff on May 6, 1969, was disjointed and wordy, it stated a *prima facie* claim of conscientious objection and stated further, that the claim had not fully crystallized until April 20, 1969, a date immediately prior to the date of mailing of the notice to report for induction, when defendant claimed to have experienced a religious conversion at a prayer meeting.[2] On May 6, 1969, the Board notified defendant that, because of his withdrawal from the Navy program, the order to report for induction on May 14, 1969, was "still valid." On May 12, 1969, defendant requested a reopening of his classification to consider his conscientious objector claim. The State Director[3] replied on May 13,

---

2. In order to state a *prima facie* conscientious objector claim in cases in which the claim is rooted in a belief in God, the registrant must state that he is "conscientiously opposed to war in any form by reason of religious training and belief." Section 456(j), Title 50-App., U.S.C.; United States v. Lamberd (W.D.Mo.) 315 F.Supp. 1362, 1368. In part on Form SSS 150, defendant stated:

"I have no objection to serving at a civilan (sic) hospital or as a civilan (sic). But for conscience's sake I cannot take part in any effort contributing to carnal war against my brothers or take part in anything that would keep me from going with the brethen (sic) of my church to worship every Lord's day.

\*     \*     \*     \*     \*

"It was in late March that I first began discussing religious matters with my wife. She had been talking to our neighbors (Mr. & Mrs. Martin Clive) who are members of the Church of Christ. There I heard the word of God explained by our ministers. I also read the Bible and studied at home. On April 20, I accepted Christ and was baptised the same day."

3. This is evidence of the Board's mistake of law in deeming itself powerless to reopen defendant's classification for any

1969, that plaintiff's letters had been received and that it was necessary for plaintiff to report for induction. This action by the State Director rather than the Board at this point is crucial, for it evidences the Board's erroneous conclusion that it had no power itself to act under the provisions of 32 C.F.R. § 1625.2. Plaintiff failed to report as ordered on May 14, 1969. Subsequently, on June 11, 1969, a letter of B. M. Carnell, M.D., reported the pregnancy of defendant's wife, and defendant's letter of the same date requested a IIIA hardship deferment because of the pregnancy of his wife and the unusual emotional strain [4] and financial support problems [5] accompanying it. It is apparent that the cumulative circumstances stated in these letters make a *prima facie* hardship claim.[6] The Board replied by letter dated August 6, 1969, that it had no authority to reclassify defendant after the order to report for induction had been issued. Subsequently, on January 12, 1970, the Board formally refused to reopen, without stating any reasons, to consider the IIIA claim. The refusal, it must be noted, came after the induction date. Thereafter, on January 29, 1970,

the indictment in this action was returned.

On March 4, 1970, a letter was written to the Local Board by the Assistant United States Attorney. It reads as follows:

"I have now received the supplemental portion of the cover sheet in this case.

"However, upon my review of the total file, I find several items which should be completed before we can successfully prosecute this case.

"I do not find that the local board has documented its consideration of the defendant's belated conscientious objector claim, nor his belated III–A claim based on hardship reasons.

"Accordingly, I respectfully make the following suggestions to the local board:

1. Accord the registrant an informal appearance before the board to discuss his claims to both a I–O classification, and a III–A based upon hardship reasons.

2. Make a determination as to whether there has been a change in circumstances over which the regis-

---

reason after the induction order had been issued. Apparently, the Board thought that the only way reopening could be achieved was under 32 C.F.R. § 1625.3 (a) which provides as follows:

"The local board shall reopen and consider anew the classification of a registrant upon the written request of the State Director of Selective Service and upon receipt of such request shall immediately cancel any Order to Report for Induction . . ."

Under the provisions of 32 C.F.R. § 1625.2(b), however, the Board could reopen on a finding of a change in circumstances, creating a hardship, beyond the control of the registrant.

4. The letter of T. W. Garrison, Jr., M.D., dated December 5, 1969, stated that:

"This is to certify that Sylvia England is under my care for pregnancy and is expected to deliver on or about January 1, 1970. She has had more severe vomiting of pregnancy than we normally see. This has been caused by emotional disturbance primarily."

5. The letter of E. C. Lehman (October 2, 1969 and R. E. England (October 2, 1969) stated that severe economic hardship would result to defendant's wife and expected child if defendant should be inducted.

6. Under the specific provisions of 32 C. F.R. § 1630(b)(1), "In Class III–A shall be placed any registrant whose induction into the armed forces would result in extreme hardship (1) to his wife, divorced wife, child, parent, grandparent, brother, or sister who is dependent upon him for support . . ." The combined letters make a *prima facie* claim under this provision. In Wright v. Selective Service System (D.Minn.) 319 F.Supp. 509, it was held that a pregnancy occurring before the induction notice, about which the registrant had no knowledge until after the induction notice, was a circumstance beyond his control and made a *prima facie* claim under the III–A "fatherhood" exemption.

trant had no control pursuant to SSR, § 1625.2(b).

3. Fully document the registrant's file as to the fact that the registrant was given an opportunity to appear, and present evidence in support of his claim.

4. Notify the registrant in writing of the decision in his case. Once the board has made its determinations, if, of course, the local board does not choose to reopen the registrant's classification, we will proceed with prosecution. However, should the local board decide, on the basis of the evidence presented, that the registrant has, indeed, presented facts justifying a reclassification, and which are beyond the control of the registrant, they should feel perfectly free to take appropriate reclassification action.

"Should they not reopen, we are prepared to vigorously prosecute this case."

Probably as a result of this suggestion defendant was permitted to appear before the Board to "assist the United States Attorney in the prosecution of the case." The Local Board does not deny that, during the appearance, plaintiff's conscientious objector claim was discussed on its merits.[7] No discussion of the hardship claim, however, was apparently had, although the Board purported to find that this did not constitute a change of circumstances beyond his control. On March 25, 1970, the Board notified the defendant that, by a 3 to 0 vote, the Board had elected "not to reopen your case." The Board's letter of March 27, 1970, to the United States Attorney concluded as follows:

"Mr. England presented a claim for a 3–A Hardship classification. Referring to SSR 1625.2(b), the board members felt that this hardship was not something over which he had no control, but, in fact, had been caused by his refusing to report for induction in May, 1969. When this man was ordered for induction he had not presented a statement of his wife's pregnancy and says they did not know she was pregnant until after he had refused to report for induction.

"Mr. England then presented a claim for a 1–O classification claiming that he experienced a religious conversion between 24 April, 1969, when the SSS From 252 was mailed to him, and 14 May, 1969, which was his date of induction. The board members deliberated long and thoughtfully on this claim, but, again referring to SSR 1625.2(b), they felt that they could not grant a 1–O classification."

Subsequently, on October 27, 1970, the Board formally postponed the induction order on which this prosecution is based. Subsequently, after advice from State headquarters, the order of postponement was rescinded as erroneous on November 24, 1970.

Based on the foregoing facts, the indictment herein should be dismissed without prejudice to further proper proceedings before the Local Board and the State Selective Service System. The above facts show that the Local Board initially refused to reopen defendant's classification on the erroneous belief that it had no legal power to do so; that then it considered the conscientious objector and hardship claims after the finding of the indictment and purported then to apply 32 C.F.R. § 1625.2, which was by then inapplicable; and that in a post indictment action it finally denied the conscientious objector claim on its merits without giving the plaintiff any right of appeal.

It is concluded that the Board's consideration of the hardship and conscientious objector claims after the finding of the indictment in effect postponed and finally cancelled the order to

---

7. Defendant submitted his view of the minutes of the hearing of March 23, 1970, in which was included an extensive discussion of the merits of the conscientious objector claim. The Board's reply of April 8, 1970, did not label any of the factual representations as erroneous, but only that they were "out of context."

report for induction upon which the indictment was based. Therefore, the indictment should be dismissed without prejudice to further proceedings respecting defendant in the Selective Service System. This result is reached upon the following separate and independent grounds:

■■■ (1) The Board concluded in May 1969 that it was without power to reopen and failed to rule on defendant's request for a reopening under 32 C.F.R. § 1625.2. The Board apparently believed that the only way which the reopening could be accomplished was under 32 C.F.R. § 1625.3(a) on the written request of the State Director.[8] In instances in which no decision has been made on a request to reopen by the time for induction, the order to report for induction should be postponed. In Battiste v. United States (C.A.5) 409 F.2d 910, 914, it was held that when more time or information was necessary to make a decision whether to reopen a classification "steps could have been taken to postpone appellant's induction or to otherwise assure that the case was properly considered." This was not done in this case. Therefore, it must be concluded that the Board's failure to act had the effect of postponing the induction order. The Board did not get around to considering the claims and denying reopening until almost a year later. Therefore, defendant could not be guilty of failing to report for induction on May 14, 1969, when it was within the period of the *de facto* postponement.

See 32 C.F.R. § 1625.2(a) providing in part that a registrant's induction may be postponed for an extreme emergency beyond his control (as was the failure of the Board to rule on his requests in this case) and that "no registrant whose induction has been thus postponed shall be inducted into the armed forces during the period of any such postponement." Further, the Board erred in refusing to hear promptly the claims for reopening and for reclassification after the presentation of *prima facie* claims of conscientious objection and hardship on March 23, 1970. As was held in Davis v. United States (C.A.8) 410 F.2d 89, 93, 32 C.F.R. § 1625.2 is still applicable while an induction order is postponed, but when it is cancelled "prior to the time the board reconsiders a registrant's case, it would seem that the board's authority to completely reconsider a classification is restored." To the effect that an unreasonably long delay may cancel the order to report for induction is United States v. Lonidier (C.A.9) 427 F.2d 30, 31.

■■ (2) The hearing of March 23, 1970, constituted a *de facto* reopening of registrant's classification. Miller v. United States (C.A.9) 388 F.2d 973; Kemp v. United States (C.A.5) 415 F.2d 1185; United States v. Kerwin (D.Minn.) 313 F.Supp. 781; United States v. Schmidt (D.Minn.) 313 F.Supp. 456; Murray v. Blatchford (D.R.I.) 307 F.Supp. 1038, 1055; United States v. Westphal (D.S.C.) 304 F.Supp. 951.[9] In Witmer v. United States, 348 U.S. 375, 384, 75 S. Ct. 392, 397, 99 L.Ed. 428, 435, it was

---

8. Under the recent ruling of Ehlert v. United States, 402 U.S. 99, 91 S.Ct. 1319, 28 L.Ed.2d 625, however, the Board might clearly fail or refuse to reopen the case, without comment, on the ground that a conscientious objector claim maturing after the issuance of the order of induction can not constitute circumstances beyond the control of registrant under § 1625.2, *supra*. But, at the time defendant was to report for induction, it was held in some cases that the Board had the power, if not the duty, to reopen a claim. See, e. g., United

States v. Gearey (C.A.2) 379 F.2d 915, cert. denied 389 U.S. 959, 88 S.Ct. 335, 19 L.Ed.2d 368, reh. denied 389 U.S. 1010, 88 S.Ct. 561, 19 L.Ed.2d 611. Nevertheless, the Board, believing that it had no power even to rule on a request to reopen, had not ruled on the merits of defendant's pending requests.

9. As noted below, the recent holding of Ehlert v. United States, *supra*, did not purport to affect the doctrine of *de facto* reopening.

held that a classification had in fact been reopened when:

"The record of this hearing . . . [showed] that Witmer did offer his proof, and that the Board did discuss the matter. The chairman then told Witmer that the new evidence he submitted did not entitle him to a ministerial exemption."

As noted below, essentially the same operative facts are present in the case at bar. There was a *de facto* reopening, then, which had the procedural effect of at least postponing temporarily the order to report for induction.

■■■ (3) The Board did in fact postpone the induction order and failed to fix a new date on which defendant should report for induction. As noted above, the Board on October 27, 1970, issued its order that the induction order of April 24, 1969, requiring defendant to report on May 14, 1969, was postponed until "further notice." On November 10, 1970, the State Director requested that the SSS Form 264 thus issued be rescinded. On November 24, 1970, the Board notified defendant that "The SSS Form No. 264 (Postponement of Induction), dated 27 October 1970, was erroneously issued to you and is hereby rescinded." No new date for reporting was given. Under the applicable regulations, the Board is without authority to rescind or terminate a postponement without giving a date to report. Under 32 C.F.R. § 1632.2(d):

"A postponement shall not render invalid the Order to Report for Induction (SSS Form No. 252) which has

been issued to the registrant but shall operate only to postpone the reporting date and the registrant *shall report on the new date* without having issued to him a new Order to Report for Induction." (Emphasis added.)

Even though no new date for reporting was given the notice was operable to postpone the date of May 14, 1969. No authority is given by the regulations to rescind a postponement retroactively to render a registrant criminally responsible because of failure to report for induction on a date within the period of postponement. Therefore, by operation of the Selective Service regulations, the order to report for induction was effectively postponed from May 14, 1969. Therefore, the indictment based upon defendant's alleged failure to report on that date is not valid. The recent ruling of the United States Supreme Court in Ehlert v. United States, 402 U.S. 99, 91 S.Ct. 1319, 28 L.Ed.2d 625, does not dictate a decision contrary to that reached in the case at bar. That case may not nullify—retroactively, at least—the doctrines of *de facto* reopening and *de facto* postponement.[10] ᛕ

■■■ Even if Ehlert v. United States, *supra*, shall prove to have retroactively abrogated the *de facto* doctrine, the dismissal in this case rests independently upon the explicit postponement made of the induction order in October 1970. It is said that a registrant whose induction date is postponed remains under a continuing duty to report. United States v. Evans (C.A.9) 425 F.2d 302. But 32 C.F.R. § 1632.14(a) provides that upon termina-

10. In *Ehlert*, the Court held that a local board could apply 32 C.F.R. § 1625.2 to bar late conscientious objector claims alleged to have matured after the mailing of the report for induction. The rationale behind the rule was that late-maturing claims may be heard by the military authorities after induction. (An opposed line of cases, represented by United States v. Gearey, *supra*, held that it was the obligation of the draft board to consider reopening the statement of a *prima facie* conscientious objector claim

"crystallized" after the notice to report for induction had been issued if a specific finding of "late crystallization were made".) Although *Ehlert* held it was reasonable to restrict reopening to "nonvolitional" and objective circumstances, it also held that "[i]f * * * a situation should arise in which neither the local board nor the military had made available a full opportunity to present a *prima facie* conscientious objector claim for determination . . . a wholly different case would be presented."

tion of a postponement, the registrant "shall report for induction at such time and place as may be fixed by the local board." No time or place was fixed by the notice of the local board terminating the postponement of the induction order. As in Liese v. Local Board No. 102 (C. A.8) 440 F.2d 645 (1971), defendant in this case was given no indication after the postponement when he should report. See also Zerillo v. Local Board 102 (C. A.8) 440 F.2d 136 (1971), United States v. Watson, (C.A.8) 442 F.2d 1273 (1971).[11]

11. Even if 32 C.F.R. § 1625.2 had still been applicable in March, 1970, one claim should have been reopened. With respect to the hardship claim, the Board, in its letter to the United States Attorney under date of March 27, 1970, stated that they

"felt that this hardship was not something over which he had no control, but, in fact, had been caused by his refusing to report for induction in May, 1969. When this man was ordered for induction he had not presented a statement of his wife's pregnancy and says they did not know she was pregnant until after he had refused to report for induction."

According to defendant's undenied recounting of the hearing, however, the Board acted again under the supposition it could not now reopen the case. The foregoing statement, premised as it is on the *sine qua non* of the claim being timely, reflects the same erroneous supposition. Under this view of causation, which ignored the financial hardship and emotional disturbance aspects, an inductee would not be ineligible for a hardship discharge simply because he had not raised the claim before his induction. Simply stated, the Board has reiterated its mistaken axiom that it cannot consider a late claim. The same is true of the expression that the conscientious objector claim "could not" be granted.

This case is in this respect not unlike those cases in which the induction order is considered invalid for failure of the Selective Service file to show, or the Board to state, any "basis-in-fact" for refusing the conscientious objector claim on its merits. Batterton v. United States (C.A.8) 260 F.2d 233; United States v. Cummins (C.A.8) 425 F.2d 646; United States v. St. Clair (E.D.N.Y.) 293 F. Supp. 337; United States v. Lamberd (W.D.Mo.) 315 F.Supp. 1362. No finding is made by the Board in this case either that the late maturation of the claim was or was not beyond the control of the defendant, or that the claim is procedurally barred from consideration by the provisions of § 1625.2. The Board states that it cannot grant the exemption. The refusal to reopen must be supported by a "basis-in-fact." United States ex rel. Geiger v. McBee (C.A. 7) 430 F.2d 344. This has been held to be true in cases finding no circumstances beyond the control of the registrant warranting a change in status. United States v. Jennison (C.A.6) 402 F.2d 51, cert. denied 394 U.S. 912, 89 S.Ct. 1024, 22 L.Ed.2d 225, reh. denied 394 U.S. 995, 89 S.Ct. 1475, 22 L.Ed.2d 773. If it is discretionary with the Board to reopen, an exercise of discretion must be evidenced. Cf. United States v. Norman (C.A.9) 412 F.2d 629. But no exercise of discretion at all is evidenced by the file in the case at bar. The indictment must therefore be dismissed for the separate and additional reason that discretion had not been exercised by the board in accordance with the applicable regulation on or before May 14, 1969, the date on which defendant was to report for induction under the then-existing induction order. In Battiste v. United States (C.A.5) 409 F.2d 910, 914, it was held that where more time or information was necessary to make a decision whether to reopen a classification after the submission of a *prima facie* case for reclassification, "steps could have been taken to postpone appellant's induction or to otherwise assure that the case was properly considered." Proper consideration had not taken place at the time defendant was to report for induction. Therefore, the order to report for induction should have been postponed until the Board could appropriately exercise its discretionary power on the question of reopening. Further, the hearing subsequently held on March 23, 1970, in an effort to "build a record" to support an earlier refusal to reopen could not have established a "basis-in-fact" for refusal to reopen a classification with which to support an induction order issued nearly a year before that time. If the matter were to be reconsidered by the Board, the indictment should have been dismissed in the meantime. This allows the claim of hardship now to come within the jurisdiction of the Board, though initially asserted after the reporting date.

It would therefore be advisable for the Board, if further proceedings are had, to grant or deny defendant's conscientious objector and hardship claims on their merits and, if they are so denied, to grant him full rights of appeal to the State System. As stated above, either the local board or the military must give a hearing on the conscientious objector claim. Because reopening is now necessary, the Board should give the hearing which is required on that claim.

For the foregoing reasons, on the application of currently applicable law to the peculiar facts of this case, the indictment should be dismissed without prejudice to further proceedings in the Selective Service System.

The case is stronger with respect to the III–A hardship claim, thanks to the local board's delaying a proper exercise of discretion. The claim of pregnancy itself initially made is alone insufficient to invoke the III–A provisions. United States v. Lamberd, *supra*. But defendant had clearly stated facts by March 23, 1970, to indicate a *prima facie* claim of hardship within the terms of 32 C.F.R. § 1622.30(b), which provides that:

"In Class III–A shall be placed any registrant whose induction into the armed forces would result in extreme hardship (1) to his wife, . . ." The finding that the professed hardship could not have arisen because of circumstances beyond the control of defendant, made without hearing or taking any evidence at all on the question, was clearly erroneous.